15-164-cv
Lawrence + Memorial Hospital v. Burwell, et al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

AUGUST TERM, 2015

(ARGUED: NOVEMBER 4, 2015     DECIDED: FEBRUARY 4, 2016)

Docket No. 15-164-cv
_____

LAWRENCE + MEMORIAL HOSPITAL,

*Plaintiff-Appellant*,

— v. —

SYLVIA MATHEWS BURWELL, SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES,
MARILYN TAVENNER, ADMINISTRATOR, CENTERS FOR MEDICARE AND MEDICAID SERVICES,
ROBERT G. EATON, CHAIRMAN, MEDICARE GEOGRAPHIC CLASSIFICATION REVIEW BOARD,

*Defendants-Appellees*,

_____

Before:

HALL and LYNCH, *Circuit Judges*, and RAKOFF, *District Judge*.[*]
_____

At issue in this case is whether a regulation issued by the Secretary of Health and Human Services violates the Medicare Act and the Administrative Procedure Act. Because the challenged regulation contravenes the unambiguous language of the Medicare Act, the regulation is invalid. The judgment of the district court (Janet Bond Arterton, *Judge*) is therefore REVERSED and REMANDED for determination of the appropriate remedy.

_____

---

[*] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

JOSEPH D. GLAZER, Law Office of Joseph D. Glazer, P.C., Princeton, NJ (Steven M. Basche, Law Offices of Steven M. Basche, LLC, *on the brief*), *for Plaintiff-Appellant.*

CAROLYN IKARI, Assistant United States Attorney, Hartford, CT (Marc H. Silverman, of counsel, *on the brief*), Assistant United States Attorney, *for* Deirdre M. Daly, United States Attorney for the District of Connecticut, *for Defendants-Appellees.*

_____

RAKOFF, *District Judge*:

Under the Medicare Act, a hospital's classification as "rural" or "urban" may affect the amount of reimbursement that the hospital receives for providing medical services, as well as the hospital's access to certain medical programs. But a hospital can reasonably be viewed as "rural" in some respects (*e.g.*, it is situated in a rural area and attends to the needs of a rural population) and "urban" in other respects (*e.g.*, it needs to attract trained staff from nearby urban areas and to do so must pay urban wage rates). To accommodate this possibility, the Medicare statute, through a complicated classification process, permits a hospital to be classified as urban for some purposes and rural for others. One such statutory provision, 42 U.S.C. § 1395ww(d)(8)(E)— commonly referred to as part of "Section 401"[1]—permits some hospitals that are geographically located in an urban area to be designated as rural "[f]or purposes of this subsection," *i.e.*, subsection (d). They may be able to obtain certain benefits, such as easier access to a more favorable drug pricing program, that would not ordinarily be available to them if they were

---

[1] Specifically, 42 U.S.C. § 1395ww(d)(8)(E) is a codification of Section 401(a) of the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999, Pub. L. No. 106-113, app. F, 113 Stat. 1501A-321 ("Section 401"). Section 401 contains other sub-parts codified in different areas of the Medicare statute, namely 42 U.S.C. § 1395*l*(t)(16)(A) and 42 U.S.C. § 1395i-4(c)(2)(B)(i). The parties here refer to all these sub-sections as parts of "Section 401," and the Court will adopt that reference as well.

treated as urban. However, another provision of the same subsection (d), specifically, 42 U.S.C. § 1395ww(d)(10), creates a process by which a Medicare Geographic Classification Review Board ("MGCRB") can redesignate hospitals to a different area from that to which they have been otherwise designated, in order to receive a different wage reimbursement rate. The result is that a hospital that is classified as "rural" in order to obtain favorable drug pricing can contemporaneously apply to be designated to an urban area for wage reimbursement purposes.

Notwithstanding these statutory provisions, in 2000 the Secretary of Health and Human Services (the "Secretary") issued a regulation, known as the "reclassification rule," 42 C.F.R. § 412.230(a)(5)(iii), which provided that a hospital that has been reclassified from urban to rural under subsection (d)(8)(E) may not thereafter receive an additional reclassification by the MGCRB for reclassification as urban under subsection (d)(10). Because the regulation contravenes the plain language of the statute, it exceeds the Secretary's authority and must be held invalid, for the reasons stated below.

We begin, as we must, with the text of the statute. The Medicare Act—Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*—provides for hospitals to be reimbursed for serving Medicare beneficiaries. *See* 42 U.S.C. § 1395(f); *Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d 163, 168 (2d Cir. 2006). Hospitals' reimbursements are calculated based on rates that are prospectively determined for a fiscal year, not on the hospitals' actual costs. *See* 42 U.S.C. § 1395ww(d); *Bellevue*, 443 F.3d at 168. To calculate these rates, the Secretary first establishes a nationwide standardized rate for hospitals located in urban or rural areas. *See* 42 U.S.C. § 1395ww(d)(2)(A)-(D). Hospitals are initially classified to urban or rural areas based on their geographical location. *See* 42 U.S.C. § 1395ww(d)(2)(D). The Secretary then multiplies the standardized rate by a "wage index" that accounts for geographical variation in wage-related

costs. *See* 42 U.S.C. §§ 1395ww(d)(2)(H), (3)(E). The "wage index" reflects the relationship between the local average of hospital rates and the relevant national average. *See* 42 U.S.C. §§ 1395ww(d)(2)(H), (3)(E).

As initially promulgated, however, this reimbursement determination system "yielded inequitable results for some hospitals," for example when "a hospital in one area competed for the same labor pool as hospitals in a nearby, larger urban area but received a lower reimbursement" based on its geographical area's wage index. *Robert Wood Johnson Univ. Hosp. v. Thompson*, 297 F.3d 273, 276 (3d Cir. 2002). Therefore, Congress in 1989 amended the Medicare Act to create the MGCRB. *See* Pub. L. No. 101-239, § 6003(h) (codified at 42 U.S.C. § 1395ww(d)(10)). The MGCRB considers hospitals' applications to "change the hospital's geographic classification for purposes of determining" the hospital's average standardized reimbursement amount or wage index. 42 U.S.C. § 1395ww(d)(10)(C)(i).

Pursuant to the Medicare statute, *see* 42 U.S.C. § 1395ww(d)(10)(D)(i), the Secretary publishes guidelines for the MGCRB's use in making reclassification decisions. *See* 42 C.F.R. § 412.230 *et seq*. According to these guidelines, a hospital must generally meet three criteria to obtain an MGCRB reclassification. First, the hospital must demonstrate proximity to the area to which it seeks redesignation (within 15 miles for an urban hospital and 35 miles for a rural hospital). *See* 42 C.F.R. § 412.230(b)(1). Second, the hospital must show that its wages meet certain benchmarks relative to the wages of the area to which it seeks redesignation (84% for an urban hospital and 82% for a rural hospital). *See* 42 C.F.R. § 412.230(d)(1)(iv)(E). Third, the hospital must demonstrate that its wages meet certain benchmarks relative to the wages of its existing classification area (108% for an urban hospital and 106% for a rural hospital). *See* 42

C.F.R. § 412.230(d)(1)(iii)(C). Therefore, a hospital's ability to reclassify through the MGCRB process may (though need not) be affected by its designation as "urban" or "rural."

Furthermore, a rural hospital is eligible to be treated as a Rural Referral Center ("RRC") pursuant to another provision of the Medicare statute, *see* 42 U.S.C. § 1395ww(d)(5)(C)(i). The RRC program was established to "take into account the special needs" of certain rural hospitals, such as high-volume institutions. *See id.* Hospitals with RRC status are exempted from the proximity requirement of the MGCRB process, see 42 C.F.R. § 412.230(a)(3)(i), and any hospital that "was ever" an RRC is exempt from the requirement that its wages meet certain benchmarks relative to those of its existing classification area. *See* 42 C.F.R. § 412.230(d)(3)(i).

Particularly relevant to this case is the fact that RRCs more easily qualify for preferable drug pricing. The 340B Drug Discount Program, enacted by Section 602 of the Veterans Health Care Act of 1992, Pub. L. 102-585, 42 U.S.C. § 256b, enables certain hospitals to buy covered outpatient drugs at favorable prices. Since 2010, a rural hospital that qualifies as an RRC may more readily access the 340B Drug Discount Program. Patient Protection and Affordable Care Act, Pub. L. 111-148, § 7101, 124 Stat. 821-22 (2010). Specifically, a hospital's "disproportionate share adjustment percentage," which is based on the percentage of low-income patients that a hospital serves, must generally be 11.75% in order for a hospital to participate in the 340B Drug Discount Program, *see* 42 U.S.C. § 256b(a)(4)(L)(ii); but an RRC is eligible to participate in the 340B Drug Discount Program if its disproportionate share adjustment percentage is as low as 8%, *see* 42 U.S.C. § 256b(a)(4)(O). The classification of a hospital as an RRC (which in turn requires the hospital to be classified as rural) may therefore permit an otherwise ineligible hospital to participate in the 340B Drug Discount Program. And, any such hospital may retain its RRC status even after reclassification to an urban wage index area. *Cf.*

5

*Medicare Program: Geographical Classification Review Board; Procedures and Criteria*, 55 Fed. Reg. 36754, 36760 (Sept. 6, 1990) ("A hospital that is reclassified from a rural or other urban area only for purposes of the wage index is not considered urban for any other purpose than its labor market area designation.")

While the MGCRB process provides a mechanism for hospitals—urban or rural—to seek reclassification to areas with higher wage indices (often, nearby urban areas), another amendment to the Medicare statute permits certain hospitals geographically located in urban areas to be designated as rural for other purposes. This amendment was enacted in 1999 as Section 401 of the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999, Pub. L. No. 106-113 ("Section 401").[2] Section 401(a), the provision of Section 401 most here at issue, is codified at 42 U.S.C. § 1395ww(d)(8)(E) and reads in full:

> (a) IN GENERAL.—Section 1886(d)(8) (42 U.S.C. 1395ww(d)(8)) is amended by adding at the end the following new subparagraph:
>
> (E)(i) For purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.
>
> (ii) For purposes of clause (i), a subsection (d) hospital described in this clause is a subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:
>
> (I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed. Reg. 6725)).
>
> (II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).

---

[2] "SCHIP" stands for "State Children's Health Insurance Program."

(III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.

(IV) The hospital meets such other criteria as the Secretary may specify.

42 U.S.C. § 1395ww(d)(8)(E).

Both sides in the instant litigation agree that "this subsection"— in the statement "[f]or purposes of this subsection, . . . the Secretary shall treat the hospital as being located in the rural area . . ."—refers to 42 U.S.C. § 1395ww(d), which also contains the description of the MGCRB process. *See* 42 U.S.C. § 1395ww(d)(10).

The conference report accompanying the legislation enacting Section 401 states, in relevant part, that Section 401

[p]rovides that a hospital in an urban area may apply to the Secretary to be treated as if the hospital were located in a rural area of the State in which the hospital is located. Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic Reclassification Review Board for geographic reclassification to another area. The Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. 106-479 (Nov. 18, 1999).

After Section 401 was passed, the Secretary expressly recognized that this section "might create an opportunity for some urban hospitals to take advantage of the MGCRB process by first seeking to be reclassified as rural under [Section 401] (and receiving the benefits afforded to rural hospitals) and in turn seek reclassification through the MGCRB back to the urban area for purposes of their standardized amount and wage index and thus also receive the higher payments that might result from being treated as being located in an urban area." 65 Fed. Reg. 47052, 47087 (Aug. 1, 2000). In response, the Secretary promulgated the regulation challenged in the

7

instant case (the "reclassification rule"), which states, in relevant part, that "[a]n urban hospital that has been granted redesignation as rural under § 412.103 [the regulation implementing Section 401] cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect." *See* 65 Fed. Reg. 47052, 47108 (Aug. 1, 2000), 42 C.F.R. § 412.230(a)(5)(iii). In other words, a hospital that has been designated as rural pursuant to Section 401 (a "Section 401 hospital") may not be reclassified by the MGCRB, unless it first cancels its rural status for the fiscal years for which it seeks reclassification. *See* 70 Fed. Reg. 47278, 47444 (Aug. 12, 2005).

Against this background, we turn to the facts of this case, which are essentially undisputed. Plaintiff Lawrence + Memorial Hospital ("Lawrence") is an acute care hospital located in New London, Connecticut. Lawrence's geographic location for Medicare reimbursement purposes was originally designated as part of the Norwich-New London, Connecticut urban area. On July 2, 2013, Lawrence sought reclassification under Section 401 from an urban to a rural hospital, as well as additional designation as an RRC. On August 13, 2013, the relevant authority, namely, the Centers for Medicare and Medicaid Services ("CMMS"), granted both of Lawrence's requests, and Lawrence was recognized as a rural hospital effective July 3, 2013. Immediately thereafter, however, on September 3, 2013, Lawrence applied to the MGCRB, seeking reclassification for wage reimbursement purposes to the Nassau-Suffolk, New York urban area, which had a higher wage index. Since the grant of such request would seemingly violate the reclassification rule promulgated by the Secretary, Lawrence, on October 11, 2013, filed the instant action in the district court, seeking a preliminary injunction to enjoin the defendants (consisting of the Secretary, the Administrator of

8

CMMS, and the Chairman of the MGCRB) from applying the Secretary's reclassification rule to Lawrence's MGCRB application.

On December 6, 2013, the district court denied Lawrence's motion for a preliminary injunction. Consequently, on December 16, 2013, Lawrence requested cancellation (effectively under protest) of its rural status under Section 401. The request was approved on December 19, 2013, and the cancellation of rural status had the additional effect of cancelling Lawrence's RRC status. Because Lawrence's disproportionate share adjustment factor for the purposes of the 340B Drug Discount Program is greater than 8% (the threshold for RRCs) but less than 11.75% (the general threshold), Lawrence thus became ineligible to participate in the 340B Drug Discount Program. On January 27, 2014, the MGCRB, having found that Lawrence met all the relevant criteria, *see supra*, approved Lawrence's application to be reclassified to the Nassau-Suffolk, New York urban area.

Having thus been deprived (by virtue of the reclassification rule) of its eligibility to participate in the 340B Drug Discount Program, Lawrence filed an amended complaint on March 25, 2014, seeking a declaration that the Secretary's regulatory scheme violates the Medicare Act and the Administrative Procedure Act; a permanent injunction, an order of mandamus, or both, prohibiting the Secretary and other officials from applying the reclassification rule to any future MGCRB applications by Lawrence; and a permanent injunction, an order of mandamus, or both, ordering the Secretary and other officials to consider plaintiff (a) to be reclassified to the Nassau-Suffolk urban area; *and* (b) to be a rural hospital and an RRC.[3] In June 2014, both parties moved

---

[3] Lawrence was in fact eligible for MGCRB reclassification regardless of whether it was classified as urban or rural, partially on the basis that it had once been an RRC. Indeed, as noted above, Lawrence ultimately was reclassified to its desired wage index area: the Nassau-Suffolk, New York urban area. The salient point here, however, is that the Secretary's challenged

9

for summary judgment. On December 23, 2014, the district court granted the defendants' motion and entered judgment in favor of defendants.

The district court provided the reasons for her ruling in a memorandum issued on December 22, 2014. The district court noted that "[t]here do not appear to be any genuine issues of material fact here" and determined that the parties' disagreement over the proper interpretation of Section 401 would be analyzed under the framework set out by *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The district court reasoned that under *Chevron* Step One—which, she held, requires the Court to consider "whether Congress has clearly spoken in Section 401 as to whether the Secretary is required to treat hospitals with acquired rural status as 'rural' for the purposes of an application to the MGCRB for geographic classification," *Lawrence & Memorial Hosp. v. Burwell*, No. 13-1495, 2014 WL 7338859, at *5 (D. Conn. Dec. 22, 2014)—the statutory text was ambiguous, because Section 401 "does not discuss the intersection of redesignation and geographic reclassification under the Medicare Act" and "does not address the standards by which the MGCRB should evaluate a hospital's eligibility for geographic classification." *Id.* at *6 (internal quotation marks omitted). In so holding, the district court rejected Lawrence's argument that the statutory language was unambiguous and that any alleged ambiguity was definitively resolved in Lawrence's favor by the conference report accompanying Section 401. Having instead concluded that the statutory text was ambiguous, the district court moved to *Chevron* Step Two (according deference to the Secretary's interpretation of the statute), as well as to the claim that the Secretary's regulation was "arbitrary and capricious" under the Administrative Procedure Act. The district court concluded that the Secretary made a "deliberate, logical, and considered" decision based on a

regulation prevented Lawrence from maintaining its RRC status—and hence its eligibility for the 340B Drug Discount Program—while being reclassified by the MGCRB.

10

permissible construction of the statute and upheld the contested regulation. On January 20, 2015, Lawrence filed a timely notice of appeal.

This Court reviews a grant of summary judgment by the district court *de novo*. *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). At issue in the instant case is the Secretary's interpretation of the Medicare statute set forth in the Secretary's reclassification rule, 42 C.F.R. § 412.230(a)(5)(iii). As the district court correctly held, challenges to an agency's interpretation of a statute that it administers are reviewed within the framework of *Chevron*. Step One of *Chevron* analysis requires the court to determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. As for Step Two, "[i]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. At this stage, an agency regulation warrants deference unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. Similarly, in reviewing agency actions under the Administrative Procedure Act, a court asks whether the agency's action was "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

Turning to the *Chevron* Step One inquiry, "[t]o ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary. If the statutory language is ambiguous, however, we will resort first to canons of statutory construction, and, if the statutory meaning remains ambiguous, to legislative history." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007) (internal citations and modifications omitted). Furthermore, "[i]f, in light of its text, legislative history, structure, and purpose, a

11

statute is found to be plain in its meaning, then Congress has expressed its intention as to the question, and deference is not appropriate." *Li v. Renaud*, 654 F.3d 376, 382 (2d Cir. 2011) (internal quotation marks omitted). Here, we hold that the text of the statute unambiguously supports Lawrence's position that the MGCRB must review reclassification applications by Section 401 hospitals according to the standards applied to hospitals geographically located in a rural area. Thus, 42 C.F.R. § 412.230(a)(5)(iii) violates the Medicare statute.[4]

The relevant provision of Section 401(a), 42 U.S.C. § 1395ww(d)(8)(E), states: "For purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)[5] of the State in which the hospital is located." 42 U.S.C. § 1395ww(d)(8)(E). As noted, both Lawrence and defendants agree that the term "this subsection" refers to 42 U.S.C. § 1395ww(d), which also sets out the MGCRB process. *See* 42 U.S.C. § 1395ww(d)(10)(A) ("There is hereby established the Medicare Geographic Classification Review Board . . .") Lawrence therefore argues, and we agree, that Section 401 thereby unequivocally directs the Secretary to consider MGCRB applications from hospitals that have been granted rural status pursuant to Section 401 in the same way as the Secretary treats applications from other rural hospitals. To write the phrase "for the purposes of this subsection" out of the text would be "at odds with one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or

---

[4] In finding that the Secretary's interpretation violates the Medicare statute, we join the Third Circuit, which made a similar finding in July 2015. *See Geisinger Community Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs.*, 794 F.3d 383 (3d Cir. 2015).

[5] 42 U.S.C. § 1395ww(d)(2)(D) defines an urban area and a "large urban area," and then defines a rural area as "any area outside such an area or similar area."

insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation marks omitted).

Congress in Section 401 also used the mandatory term "shall." *See United States v. Monsanto*, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words [than 'shall forfeit' and 'shall order'] to express its intent that forfeiture be mandatory in cases where the statute applied . . ."). Congress did not grant the Secretary discretion in carrying out the provision "the Secretary shall treat the hospital as being located in the rural area," as it did in other parts of Section 401. *See, e.g.*, Section 401(a) (codified at 42 U.S.C. § 1395ww(d)(8)(E)) (providing that an application for Section 401 status should be "in a form and manner determined by the Secretary," 42 U.S.C. § 1395ww(d)(8)(E)(i), and that the criteria for qualifying hospitals include hospitals that "meet[] such other criteria as the Secretary may specify," 42 U.S.C. § 1395ww(d)(8)(E)(ii)(IV)). The Secretary's regulation stating that "[a]n urban hospital that has been granted redesignation as rural under § 412.103 [the regulation implementing Section 401] cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect," 42 C.F.R. § 412.230(a)(5)(iii), therefore contravenes an explicit statement of the statutory text and must be deemed invalid.

The Secretary urges that Section 401 does not directly address the interplay between reclassification under Section 401 and MGCRB reclassification. Accordingly, she argues, the agency may step in to fill the gap. The Secretary further argues that the statutory statement "[f]or purposes of this subsection . . . the Secretary shall treat the hospital as being located in the rural area . . . of the State in which the hospital is located," 42 U.S.C. § 1395ww(d)(8)(E), can be interpreted to mean that a Section 401 hospital may not receive the wage index of an urban area, since such a hospital must necessarily be treated as "rural." She also argues that the legislation

13

enacting Section 401 made "conforming changes" to ensure that Section 401 hospitals would be treated as rural for the purposes of outpatient payments and eligibility for critical access hospital status, but did not make similar changes to the MGCRB provision. *See, e.g.*, Pub. L. 106-113, Section 401(b), codified at 42 U.S.C. § 1395*l*(t)(16)(A).

These arguments are unpersuasive for several reasons. Most significantly, the Secretary's reading defies the plain meaning of the Medicare statute. As defendants acknowledged at oral argument, a "geographically rural hospital"—that is, a hospital geographically located in a rural area—may apply to the MGCRB to use an urban wage index while retaining any RRC status or other benefits accruing to rural hospitals. This is precisely what Lawrence sought to do, and the Secretary's purported distinction between "geographically rural" hospitals and hospitals with "acquired rural status" for the purposes of an MGCRB application appears nowhere in the statute. Because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002), we must presume that Congress intended hospitals with "acquired rural status" to be treated like "geographically rural" hospitals when applying for MGCRB reclassification. As for the Secretary's argument about conforming changes, Congress did not need to insert language directing conforming changes to specific parts of 42 U.S.C. § 1395ww(d) because 42 U.S.C. § 1395ww(d)(8)(E) already instructs the Secretary to treat Section 401 hospitals as rural for all purposes referenced in 42 U.S.C. § 1395ww(d).

The context of the statement "[f]or purposes of this subsection . . . the Secretary shall treat the hospital as being located in the rural area . . ." further reinforces the implausibility of the Secretary's proposed interpretation. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000) ("the words of a statute must be read in their context and

with a view to their place in the overall statutory scheme.") (internal quotation marks omitted). Congress inserted Section 401 into the Medicare statute a decade after the MGCRB was formed. By using the broad language "for the purposes of this subsection," Congress mandated that specified hospitals be treated as rural for the purposes of the entire section, including the already-existing MGCRB application process. A rule that required Congress to expressly reference the interplay between each aspect of the relevant subsection and Section 401 reclassification would hinder Congress's ability to amend statutes across wide swaths of legislative territory. *See also Geisinger*, 794 F.3d at 393 ("To comprehensively amend subsection (d)—which contains dozens of paragraphs and subparagraphs concerning inpatient reimbursement, many of which involve a hospital's rural or urban status—rather than each provision within it, Congress necessarily used broad language. Still, as a general matter of statutory construction, a term in a statute is not ambiguous merely because it is broad in scope.") (internal quotation marks omitted).

While our view of the statute's plain meaning trumps any resort to legislative history, we further note that the legislative history of Section 401 strongly supports our interpretation, not the Secretary's. A congressional conference committee report is the highest form of legislative history. *See Disabled in Action of Metro. New York v. Hammons*, 202 F.3d 110, 124 (2d Cir. 2000); *see also* Robert A. Katzmann, *Judging Statutes* 38, 54 (2014). Here, the conference report accompanying the legislation that enacted Section 401 corroborates that Congress expressly intended what its plain language clearly prescribes. In particular, the conference report states that hospitals qualifying under Section 401 "shall be eligible to apply to the Medicare Geographic Reclassification Review Board for geographic reclassification to another area" and, immediately thereafter, further states that "[t]he Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers . . . if such hospitals are so designated." H.R. Conf.

15

Rep. No. 106-479 (Nov. 18, 1999) (Conf. Rep.).[6] This language shows that the treatment of Section 401 hospitals as rural for the purposes of MGCRB reclassification, far from being a mere oversight, was expressly contemplated when Section 401 was enacted.[7]

Although the Secretary claims that our reading of the statute leads to "anomalous" results, we see nothing anomalous, let alone absurd, in what the plain language of the statute here requires.[8] Part of the Secretary's concern, as already noted, is simply that "some hospitals might inappropriately seek to be treated as being located in a rural area for some purposes and as being located in an urban area for other purposes." 65 Fed. Reg. 47054, 47087-88. But this is simply a function of the many different roles that hospitals play and the many different contexts in which they operate. Indeed, hospitals that are geographically located in rural areas and that receive MGCRB reclassification to an urban area for wage index purposes are by that fact alone "treated as being located in a rural area for some purposes and as being located in an urban area for other purposes," and defendants do not object to this longstanding state of affairs. Section 401 simply increases the number of situations in which hospitals can be treated as rural for some purposes

---

[6] The citation is to "H.R. Conf. Rep." because, as a Congressional Research Service report explains, "[e]ach conference report and joint explanatory statement is printed in the House portion of the *Congressional Record*; in addition, they are printed together as a single House report. Senate Rule XXVIII also requires that the report and statement be printed as a Senate report. By unanimous consent, however, the Senate normally waives this requirement because the report and accompanying statement are printed as a House report, and there is no need for the same documents to be printed twice." Congressional Research Service, C. Davis, Conference Reports and Joint Explanatory Statements, Congressional Research Service p. 2 (June 11, 2015).

[7] Defendants also claim that the conference report fails to address the situation of hospitals that, like Lawrence, have maintained the benefits of rural and RRC status in the MGCRB process and been granted MGCRB reclassification, but wish to retain their RRC status after MGCRB reclassification. This Court, however, is not bound by the Secretary's interpretation of the legislative history, and does not read it remotely as the Secretary does.

[8] *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotation marks omitted).

and urban for others, but there is nothing "absurd" about such a measured approach. "[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2446 (2014).

Since we find the statutory language to be plain and unambiguous, and at odds with the Secretary's reclassification rule, 42 C.F.R. § 412.230(a)(5)(iii), we have no need to engage in Step Two of the *Chevron* inquiry, or to reach the question of whether the agency's regulation violates the Administrative Procedure Act. The regulation is hereby declared invalid, the decision of the district court is reversed, and the case is remanded to the district court so that it may impose appropriate remedies consistent with this opinion.