21-2919-cv
*Eisenhauer v. Culinary Institute of America*

# In the
# United States Court of Appeals
## for the Second Circuit

———

AUGUST TERM 2022

No. 21-2919-cv

ANITA EISENHAUER,
*Plaintiff-Appellant,*

v.

CULINARY INSTITUTE OF AMERICA,
*Defendant-Appellee.*

———

On Appeal from the United States District Court
for the Southern District of New York

———

ARGUED: JANUARY 26, 2023
DECIDED: OCTOBER 17, 2023

———

Before: LIVINGSTON, *Chief Judge*, LEVAL, and CABRANES, *Circuit Judges*.

———

This case presents the questions of what a defendant must prove to establish affirmative defenses to pay-discrimination claims under federal and state laws: the Equal Pay Act, 29 U.S.C. § 206(d), ("EPA") and New York Labor Law § 194(1). Plaintiff Anita Eisenhauer alleges that defendant Culinary Institute of America violated these equal-pay laws by compensating her less than a male colleague. The Culinary Institute responds that a "factor other than sex"—its sex-neutral compensation plan, which incorporates a collective bargaining agreement—justifies the pay disparity. Eisenhauer argues that the compensation plan cannot qualify as a "factor other than sex" because it creates a pay disparity unconnected to differences between her job and her colleague's job.

Eisenhauer's position that a "factor other than sex" must be job related is incorrect as to the EPA. The plain meaning of the EPA indicates the opposite. We hold that to establish the EPA's "factor other than sex" defense, a defendant must prove only that the pay disparity in question results from a differential based on any factor except for sex. But Eisenhauer's position is correct as to New York Labor Law § 194(1). A recent amendment to § 194(1) explicitly added a job-relatedness requirement. We thus hold that to establish § 194(1)'s "factor other than sex" or "status" defense, a defendant must prove that the pay disparity in question results from a differential based on a job-related factor. The District Court did not consider the divergent requirements imposed by the EPA and § 194(1) when assessing Eisenhauer's claims and the Culinary Institute's defense.

2

Accordingly, we **AFFIRM IN PART** insofar as the United States District Court for the Southern District of New York (Paul E. Davison, *Magistrate Judge*) granted summary judgment for the defendant on the EPA claim. We **VACATE IN PART** and **REMAND** insofar as the District Court granted summary judgment for the defendant on the claim under New York Labor Law, § 194(1).

CHIEF JUDGE LIVINGSTON concurs in the judgment in part and files a separate opinion.

———

STEVEN M. WARSHAWSKY, The Warshawsky Law Firm, Mount Kisco, N.Y., *for Plaintiff-Appellant*.

REBECCA M. MCCLOSKEY (Greg Riolo, *on the brief*), Jackson Lewis P.C., White Plains, N.Y., *for Defendant-Appellee.*

JAMES DRISCOLL-MACEACHRON (Christopher Lage, Deputy General Counsel; Jennifer S. Goldstein, Associate General Counsel; Elizabeth E. Theran, Assistant General Counsel; Julie L. Gantz, Attorney, *on the brief*), Equal Employment Opportunity Commission, Washington, D.C., *for Amicus Curiae* U.S. Equal Employment Opportunity Commission.

JOSÉ A. CABRANES, *Circuit Judge*:

This case presents the questions of what a defendant must prove to establish affirmative defenses to pay-discrimination claims under federal and state laws: the Equal Pay Act, 29 U.S.C. § 206(d), ("EPA")[1] and New York Labor Law § 194(1).[2] Plaintiff Anita Eisenhauer alleges that defendant Culinary Institute of America violated these equal-pay laws by compensating her less than a male colleague. The Culinary Institute responds that a "factor other than sex"—its sex-neutral compensation plan, which incorporates a collective bargaining agreement ("CBA")—justifies the pay disparity. Eisenhauer argues that the compensation plan cannot qualify as a "factor other than sex" because it creates a pay disparity unconnected to differences between her job and her colleague's job.

Eisenhauer's position that a "factor other than sex" must be job related is incorrect as to the EPA. The plain meaning of the EPA indicates the opposite. We hold that to establish the EPA's "factor other than sex" defense, a defendant must prove only that the pay disparity in question results from a differential based on any factor

---

[1] *See* text accompanying notes 16–17, *post*, for the text of 29 U.S.C. § 206(d)(1).

[2] *See* text accompanying notes 89–94, *post*, for the text of New York Labor Law § 194(1).

except for sex.[3] But Eisenhauer's position is correct as to New York Labor Law § 194(1). A recent amendment to § 194(1) explicitly added a job-relatedness requirement. We thus hold that to establish § 194(1)'s "factor other than sex" or "status" defense, a defendant must prove that the pay disparity in question results from a differential based on a job-related factor. The District Court did not consider the divergent requirements imposed by the EPA and § 194(1) when assessing Eisenhauer's claims and the Culinary Institute's defense.

Accordingly, we **AFFIRM IN PART** insofar as the United States District Court for the Southern District of New York (Paul E. Davison, *Magistrate Judge*) granted summary judgment for the defendant on the EPA claim. We **VACATE IN PART** and **REMAND** insofar as the District Court granted summary judgment for the defendant on the § 194(1) claim.[4]

## I.    BACKGROUND

### A. Factual Background

Anita Eisenhauer, a female professor at the Culinary Institute, alleges that she is a victim of pay discrimination in violation of the EPA and New York Labor Law § 194(1). Since 2017, the Culinary Institute—a private, non-profit college and culinary school—has paid Eisenhauer

---

[3] If the pay disparity results from the employer's job-classification system, the job-classification system must also serve a "legitimate business-related" purpose. *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992).

[4] Magistrate Judge Davison conducted all proceedings and ordered the entry of a final judgment with the parties' consent. *See* 28 U.S.C. § 636(c).

a lower salary than it has paid Robert Perillo, a male professor carrying a similar course load.[5] In 2019, for example, Eisenhauer's salary was $111,263, while Perillo's was $118,080.

The Culinary Institute pays Eisenhauer and Perillo according to the sex-neutral terms of a CBA and employee handbook (together, "compensation plan").[6] The compensation plan requires fixed pay increases triggered by time, promotion, and degree completion. It does not provide for "equity" adjustments.[7] Each year, in accordance with the compensation plan, all faculty members receive the same percentage increase in their salaries. As a result, the pay disparity between Eisenhauer and Perillo continues to grow.

The pay disparity between Eisenhauer and Perillo exists because their salaries differed when they were hired and have formulaically increased over time. When the Culinary Institute hired Eisenhauer and

---

[5] The Culinary Institute also paid Eisenhauer a lower salary in 2011 and 2012. We use the terms "salary" and "pay" interchangeably, excluding consideration of any overtime, stipend, or tuition-reimbursement payments that Eisenhauer and Perillo may have received.

[6] The CBA is a contract between the Culinary Institute and the Culinary Teachers Association, the union to which Eisenhauer and Perillo belong. The Culinary Institute has recognized the Culinary Teachers Association as the exclusive representative and bargaining agent of its Hyde Park, New York faculty. The CBA governs faculty members' wages, hours, and other terms and conditions of employment.

[7] Under the CBA, the Culinary Institute may not diverge from the terms of the CBA absent a written agreement between it and the Culinary Teachers Association.

6

Perillo as learning instructors—at starting salaries of $50,000 in 2002 and $70,000 in 2008, respectively—they had different experience and education levels. Eisenhauer had fifteen years of culinary experience and had served as the executive chef in two New York City restaurants. Perillo had twenty-three years of culinary experience, previous teaching experience, and an associate's degree. He had also received higher scores on the cooking- and lecture-demonstration components of his job application. Eisenhauer does not contend that her starting salary was the product of sex-based pay discrimination.

Over the years, both Eisenhauer and Perillo received promotions and attained further education. Each earned the titles of assistant professor; associate professor; and, ultimately, full professor—she in 2013 and he in 2017. Along the way, Eisenhauer and Perillo also received their bachelor's and master's degrees—she in 2009 and 2016, and he in 2012 and 2015. Each of these achievements prompted a fixed-dollar increase in compensation.[8] The amounts of the increases differed somewhat because the precise raises required by the compensation plan changed over time. For example, Eisenhauer's salary increased by $4,000 upon her promotion to assistant professor in 2008, while Perillo's rose by $4,410 upon his promotion in 2016.

---

[8] Under the CBA, the Culinary Institute partially reimburses full-time faculty members for tuition. Both Eisenhauer and Perillo took advantage of the tuition reimbursement program. Under the terms of the employee handbook, faculty members benefiting from the tuition reimbursement program are eligible for a pay increase upon earning their degrees.

## B. Procedural Background

Eisenhauer filed suit against the Culinary Institute on November 26, 2019, alleging sex-based pay discrimination in violation of both federal and state law: the EPA, 29 U.S.C. § 206(d), and New York's equal-pay law, New York Labor Law § 194(1). The District Court evaluated her federal- and state-law claims "under the same standard"[9] and granted summary judgment for the Culinary Institute on November 3, 2021.[10] It concluded, as a matter of law, that (1) although Eisenhauer had established a *prima facie* case of sex-based pay discrimination, (2) the Culinary Institute had justified the pay disparity with its compensation plan, a "factor other than sex" that (3) Eisenhauer failed to show was a pretext for discrimination. This appeal followed.[11]

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] A dispute as to any "material fact is genuine 'if

---

[9] J.A. 270 (quoting *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 570 (S.D.N.Y. 2012), *aff'd*, 526 F. App'x 124 (2d Cir. 2013)).

[10] In doing so, the District Court also denied Eisenhauer's motion for summary judgment.

[11] We have jurisdiction to adjudicate this appeal of a final decision by the District Court under 28 U.S.C. § 1291.

[12] Fed. R. Civ. P. 56(a).

the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[13] We review *de novo* a district court's order granting summary judgment.[14] In conducting our review, we must resolve all ambiguities and draw all inferences in favor the nonmoving party.[15]

## III.   DISCUSSION

We consider in turn the requirements for establishing affirmative defenses to claims under the EPA, 29 U.S.C. § 206(d), and New York Labor Law § 194(1). As to the EPA, we hold that to establish a "factor other than sex" defense, a defendant must prove that the pay disparity in question results from a differential based on any factor except for sex. As to New York Labor Law § 194(1), we hold that to establish a "factor other than sex" or "status" defense, a defendant must prove that the pay disparity in question results from a differential based on a job-related factor.

---

[13] *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[14] *See, e.g., Republic Nat'l Bank of N.Y. v. Delta Air Lines*, 263 F.3d 42, 46 (2d Cir. 2001).

[15] *See, e.g., Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

## A. The Equal Pay Act's "Factor Other Than Sex" Defense

### 1. 29 U.S.C. § 206(d)(1)

The EPA prohibits pay discrimination on the basis of sex. It provides that

> [n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [it] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.[16]

It also sets forth four exceptions to this prohibition, for pay disparities resulting from "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on *any other factor other than sex*."[17] Each exception operates as an affirmative defense.[18] The meaning of the fourth exception—"a differential based on *any other factor other than sex*," which is often truncated to "factor other than sex"—is the focus of our inquiry.

---

[16] 29 U.S.C. § 206(d)(1).

[17] *Id.* § 206(d)(1)(i)–(iv) (emphasis added).

[18] *See Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000). "The burden of establishing one of the four affirmative defenses is 'a heavy one.'" *Id.* at 143 (quoting *Timmer v. Mich. Dep't of Com.*, 104 F.3d 833, 843 (6th Cir. 1997)).

## 2. Job-Classification Systems Under *Aldrich v. Randolph Central School District*

Arguing that a "factor other than sex" must be job related, Eisenhauer relies on *Aldrich v. Randolph Central School District*, decided more than thirty years ago.[19] There, we faced the novel question of the circumstances under which a job-classification system qualifies as a "factor other than sex."[20] We held that a facially sex-neutral job-classification system alone is insufficient to constitute a "factor other than sex," citing concern over potential pretexts for discrimination.[21]

The defendant in *Aldrich* had sought to justify the pay disparity between the plaintiff, a female "cleaner," and two male "custodians" by invoking its sex-neutral job-classification system.[22] The system classified as "custodians" those required to take a civil-service examination; "cleaners" faced no such requirement, and the defendant paid them less.[23] We rejected the invocation of a sex-neutral job-classification system "without more," observing that

---

[19] 963 F.2d 520 (2d Cir. 1992).

[20] *See id*. at 524 ("We have not yet faced the question under what circumstances a civil service classification system qualifies as a factor-other-than-sex.").

[21] *See id.* at 525–26.

[22] *Id.* at 522.

[23] *Id*. After taking the civil-service examination, candidates for a custodian position appeared on a ranked eligibility list. *See id.* The employer could hire as a custodian only those candidates ranked among the top three on that list. *See id.*

Congress intended for a job classification system to serve as a factor-other-than-sex defense to sex-based wage discrimination claims only when the employer proves that the job classification system resulting in differential pay is rooted in legitimate business-related *differences in work responsibilities and qualifications for the particular positions at issue*.[24]

Eisenhauer draws on this observation to argue that the Culinary Institute's compensation plan cannot justify the pay disparity at issue here. She does not contend that the compensation plan is a job-classification system.[25] She nevertheless maintains that the observation applies. In her view, the compensation plan cannot qualify as a "factor other than sex" because it results in a pay disparity unconnected to "differences in work responsibilities and qualifications."[26] In opposition, the Culinary Institute argues that *Aldrich* requires *only* job-classification systems, not *all* "factor[s] other than sex," to be connected to such differences.[27] We agree with the Culinary Institute.

---

Plaintiff Cora Aldrich had never earned a top-three score and had never been offered a custodian position. *See id.*

[24] *Id.* at 525 (emphasis added).

[25] We therefore do not consider any such argument. *See Britt v. Garcia*, 457 F.3d 264, 268 n.2 (2d Cir. 2006) (declining to decide an issue because a party did not raise it below or before us).

[26] *Aldrich*, 963 F.2d at 525.

[27] The Culinary Institute does not contend that its compensation plan falls within one of the EPA's exceptions for seniority, merit, or productivity systems. *See*

Eisenhauer, like others, misconstrues *Aldrich*.[28] Considering the EPA's legislative history, we reasoned that a *job*-relatedness requirement is necessary to ensure that a *job*-classification system is not a pretext for sex discrimination.[29] *Jobs* are, after all, the principal feature of *job*-classification systems. We did not hold that all "factor[s] other than sex" must be job related.[30] Nor do we do so today. *Aldrich's* underlying suggestion is that we should interpret "factor other than sex" so as to guard against pay disparities intentionally or unintentionally based on sex.[31]

### 3. Statutory Interpretation

Basic principles of statutory interpretation demonstrate that the term "any other factor other than sex" refers to any factor except for those based on sex. The term has sowed needless uncertainty and

29 U.S.C. § 206(d)(1)(i)–(iii). We therefore do not consider any such argument. *See Britt*, 457 F.3d at 268 n.2.

[28] *See, e.g.*, *Rizo v. Yovino*, 950 F.3d 1217, 1226 (9th Cir. 2020) (*en banc*) (incorrectly interpreting *Aldrich* as holding that "only job-related factors provide affirmative defenses to EPA claims").

[29] *Aldrich*, 963 F.2d at 524–26.

[30] As noted, in *Aldrich*, we faced the novel question of the circumstances under which a *job-classification system* qualifies as a "factor other than sex." *See id.* at 524; note 20 and accompanying text, *ante*. Thus, we read *Aldrich* to bear *only* on job-classification systems. *See United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245, 261 (2d Cir. 2001) (observing that we must interpret a case "in context, not in a vacuum").

[31] *Id.* at 525; note 30, *ante*.

13

confusion among our sister circuits.[32] Its meaning, we think, is about as simple as it sounds.

"Our starting point in statutory interpretation is the statute's plain meaning, if it has one."[33] To identify a statute's plain meaning, we afford words "their ordinary, common-sense meaning"[34] and "draw[ ] on 'the specific context in which that language is used.'"[35] The words "differential based on *any other factor other than sex*" appear in the context of three preceding exceptions to the EPA's prohibition: pay disparities resulting from "(i) a seniority system; (ii) a merit system;

---

[32] The circuits are split in numerous directions on the meaning of "factor other than sex." *Compare Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989) ("The fourth affirmative defense . . . is a broad 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex."), *with Rizo*, 950 F.3d at 1224 ("[W]e conclude that the fourth affirmative defense comprises only job-related factors, not sex."), *with Equal Emp. Opportunity Comm'n v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988) ("[T]he 'factor other than sex' defense does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason."), *with Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015) (noting that pay-classification systems are only an affirmative defense when pay differences are "rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue." (quoting *Aldrich*, 963 F.2d at 525)), *with Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988) ("[T]he 'factor other than sex' exception applies when the disparity results from unique characteristics of the same job; from an individual's experience, training, or ability; or from special exigent circumstances connected with the business.").

[33] *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000).

[34] *Id*.

[35] *Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022) (quoting *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016)).

14

[or] (iii) a system which measures earnings by quantity or quality of production."[36]

Upon reflection, we conclude that the meaning of "any other factor other than sex" is unambiguous:

We begin with the first half of the term "*any other factor* other than sex." "Any" means "every";[37] its meaning is "expansive" rather than restrictive.[38] "Other" means "additional."[39] And read in context, "any other factor" refers to "every"[40] "additional"[41] factor, beyond a seniority, merit, and productivity system,[42] "other than sex."

---

[36] 29 U.S.C. § 206(d)(1).

[37] *Webster's Third New International Dictionary* 97 (1963).

[38] *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (interpreting the word "any" expansively); *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588–89 (1980) (same).

"Of course, other circumstances may counteract the effect of expansive modifiers[,]" including the modifier "any." *Ali*, 522 U.S. at 220 n.4. The Supreme Court has construed such modifiers narrowly when they "included a term of art that compelled that result[,] . . . when another term in the provision made sense only under a narrow reading[,] . . . and when a broad reading would have implicated sovereignty concerns." *Id.* (citations omitted). None of the circumstances that required these narrow constructions is present here.

[39] *Webster's Third New International Dictionary* 1598 (1963).

[40] *Id.* at 97.

[41] *Id.* at 1598.

[42] *See* 29 U.S.C. § 206(d)(1)(i)–(iii).

15

The meaning of the second half of the term "any other factor *other than sex*" is also plain. "Other than" means "except for."[43] Together, then, "any other factor other than sex" means "every"[44] "additional"[45] factor "except for"[46] those based (intentionally or unintentionally[47]) on sex. Accordingly, to establish the EPA's "factor other than sex" defense, a defendant must prove that the pay disparity in question results from a differential based on any factor except for sex.[48]

---

[43] *Other Than*, *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/other%20than (last visited June 28, 2023); *see also* Theodore M. Bernstein, *The Careful Writer: A Modern Guide to English Usage* 320–21 (1965) (equating "other than" with the preposition "except").

[44] *Webster's Third New International Dictionary*, note 37, *ante*.

[45] *Webster's Third New International Dictionary*, note 39, *ante*.

[46] *Other Than*, note 43, *ante*; *see also* Bernstein, note 43, *ante*.

[47] *See Ryduchowski*, 203 F.3d at 142 ("[T]he EPA does not require a plaintiff to establish an employer's discriminatory intent.").

[48] A variety of factors *are* based on sex and thus *cannot* constitute an affirmative defense. Among those factors are (1) pretexts for sex-based pay discrimination or factors that otherwise intentionally or unintentionally mask such discrimination, *cf. Ryduchowski*, 203 F.3d at 142 (observing that a plaintiff may counter a defendant's affirmative defense to an EPA claim with evidence of pretext and that the plaintiff need not establish an intent to discriminate); (2) factors that are not sex neutral; (3) differentials that "perpetuate the effects" of historic sex-based pay discrimination by an employer, *Corning Glass Works v. Brennan*, 417 U.S. 188, 209 (1974); (4) "claimed differences between the average cost of employing workers" of different sexes as groups, 29 C.F.R. § 1620.22; and (5) collective bargaining agreements to "unequal rates of pay," 29 C.F.R. § 1620.23, meaning agreements to rates established on the basis of sex, *see* The Equal Pay Act;

The requirement that a "factor other than sex" be job related appears nowhere in the EPA's text and, in our view, conflicts with the statute's plain meaning. If Congress had intended all "factor[s] other than sex" to be job related, it would have said so. As discussed below, New York State's legislature did say so.[49] And Congress explicitly referenced job relatedness in the provision of Title VII of the Civil Rights Act of 1964[50] prohibiting employment practices that disparately impact protected classes. Under that provision, which New York's equal-pay law emulates,[51] a plaintiff establishes a disparate-impact claim "only if . . . the respondent fails to demonstrate that the challenged practice is *job related* for the position in question and consistent with business necessity."[52] Yet Congress "could not have

---

Interpretations, 51 Fed. Reg. 29818 (Aug. 20, 1986) (explaining that 29 C.F.R. § 1620.23 "make[s] clear that an employer or labor organization cannot escape the requirements of the EPA merely by including allegedly negotiated unequal rates of pay in a collective bargaining agreement"). This list is not necessarily exhaustive. The key, as *Aldrich* suggests, is that we must interpret "factor other than sex" to avoid "loopholes" that would sanction sex-based pay discrimination. *Aldrich*, 963 F.2d at 525. A job-relatedness requirement for all "factor[s] other than sex" is not necessary to avoid such "loopholes."

[49] *See* Section III.B, *post*.

[50] 42 U.S.C. § 2000e–2(k)(1)(A)(i).

[51] *See* New York Sponsors Memorandum, 2015 S.B. 1, 238th Leg., Reg. Sess. (Mar. 26, 2015) ("[A] factor [other than sex] could not be based on a sex-based differential, and must be job-related and consistent with business necessity. This standard would mirror the current defense afforded to employers in disparate impact cases under Title VII of the Civil Rights Act.").

[52] 42 U.S.C. § 2000e–2(k)(1)(A)(i) (emphasis added).

17

chosen a more all-encompassing phrase"[53] than "any other factor other than sex" when it passed the EPA. As the Supreme Court has described it, the exception for "any other factor other than sex" is a "catch-*all* exception"[54]: it catches all remaining factors that are not based on sex.

Although the plain meaning of the "catch-all exception"[55] "trumps any resort to legislative history," the legislative history "strongly supports our interpretation."[56] According to the Senate Report on the EPA bill,[57] the statute was "designed to eliminate any

[53] *Ali*, 552 U.S. at 221.

[54] *Corning Glass Works*, 417 U.S. at 204 (emphasis added).

[55] *Id.*

[56] *Lawrence + Mem'l Hosp. v. Burwell*, 812 F.3d 257, 266 (2d Cir. 2016); *see also, e.g.*, *Gonzales*, 520 U.S. at 6 ("Given the straightforward statutory command, there is no reason to resort to legislative history."); *United States v. Oregon*, 366 U.S. 643, 648 (1961) (observing that if a provision is "clear and unequivocal on [its] face," there is "no need to resort to . . . legislative history").

That the legislative history supports our interpretation is unsurprising. "[I]f the language of a rule plainly appears to address a specific problem, one *naturally* would expect legislative history (if it exists) to confirm this plain meaning." *Bourjaily v. United States*, 483 U.S. 171, 187 (1987) (Blackmun, J., dissenting).

[57] "[T]he authoritative source [within legislative history] for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.'" *Garcia v. United States*, 469 U.S. 70, 76 (1984) (third alteration in original) (quoting *Zuber v. Allen*, 396 U.S. 168, 186 (1969)); *see also* Charles Tiefer, *Congressional Practice and Procedure* 181 (1989) ("Externally, the committee report serves . . . as the central guide for courts and agencies looking into the 'legislative history' of a bill for clues on interpreting it.").

18

wage rate differentials which are based on sex. Neither the committee nor anyone proposing equal-pay legislation intend[ed] that other factors [could not] be used to justify a wage differential."[58] And, as noted in the House Report, "the broad general exclusion [was] . . . included" because "it [was] impossible to list each and every exception."[59]

Statements made during congressional debate further reinforce our interpretation. A colloquy between two members of the House committee that reported the EPA bill[60]—Representative Charles Goodell of New York, a primary sponsor of the bill, and Representative Robert Griffin of Michigan—is representative:

Mr. Goodell. . . . [W]e want the private enterprise system, employer and employees and a union, if there is a union, and the employers and employees if there is not a union, to have a maximum degree of discretion in working out . . . how much [employees] should be paid for [their work].

Mr. Griffin. So long as pay differentials are not based on sex.[61]

---

[58] S. Rep. No. 88-176, at 4 (1963).

[59] H.R. Rep. No. 88-309, at 3 (1963), *as reprinted in* 1963 U.S.C.C.A.N. 687, 689.

[60] *See generally United States v. United Mine Workers of Am.*, 330 U.S. 258, 276–77 (1947) (suggesting that the statements of members of a committee that reports a bill carry more weight than those of members who were not part of the committee).

[61] *See also, e.g.*, 109 Cong. Rec. 9203 (1963) (statement of Rep. Griffin) ("[R]oman numeral iv . . . makes clear and explicitly states that a differential based on any factor or factors other than sex would not violate this legislation."); *id.* (statement of Rep. Griffin) ("Roman numeral iv is a broad principle, and those

Mr. Goodell. Yes, as long as it is not based on sex. That is the *sole* factor that we are inserting here as a restriction.[62]

The EPA's legislative history is more than merely compatible with our interpretation. It confirms that to establish the "factor other than sex" defense, a defendant must prove only that a pay disparity in question results from a differential based on any factor except for sex. Nothing in the legislative history suggests that a "factor other than sex" must be job related. Nor is there anything to suggest that the term must be limited in in any other way.[63]

---

preceding it are really examples: such factors as a seniority system, a merit system, or a system which measures earnings on the basis of quality or quantity of production.").

[62] 109 Cong. Rec. 9198 (1963) (emphasis added).

[63] The Supreme Court's observations about the EPA in *County of Washington v. Gunther* support our view that the term "any other factor other than sex" really means *any* such factor. 452 U.S. 161 (1981). Repeated references to the exception do not suggest any limiting principle. *See id*. at 168 ("[T]he Act's four affirmative defenses exempt any wage differentials attributable to seniority, merit, quantity or quality of production, or 'any other factor other than sex.'"); *id*. at 170 ("The fourth affirmative defense of the Equal Pay Act . . . was designed differently, to confine the application of the Act to wage differentials attributable to sex discrimination."); *id.* at 170–71 ("Under the Equal Pay Act, the courts and administrative agencies are not permitted to 'substitute their judgment for the judgment of the employer . . . who [has] established and applied a *bona fide* job rating system,' so long as it does not discriminate on the basis of sex." (alteration and omission in original) (emphasis added) (quoting 109 Cong. Rec. 9209 (1963) (statement of Rep. Goodell))); *id*. at 171 n.11 (noting Representative Griffin's statement that the "factor other than sex" defense "is a 'broad principle,' which 'makes clear and explicitly states that a differential based on any factor or factors other than sex would not violate this legislation'" (quoting 109 Cong. Rec. 9203 (1963))).

### a. Ambiguity

Our interpretation would remain unchanged even if the term "factor other than sex" were ambiguous, requiring our resort to canons of statutory interpretation to discern its meaning.[64]

Beyond *Aldrich*, Eisenhauer's argument that every "factor other than sex" must be job related relies on *Rizo v. Yovino*, in which the Ninth Circuit resorted to interpretive canons to discern the term's meaning.[65] The Ninth Circuit did not assert that the term "factor other than sex" is ambiguous, much less explain why. Yet it resolved some assumed ambiguity by applying the canons of *ejusdem generis* and *noscitur a sociis*.[66] The canon of *ejusdem generis* dictates that we should

---

[64] *See Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 47 (2d Cir. 2020) ("[W]e rely upon canons of construction only if the language of the statute is ambiguous . . . ."); *cf. Rubin v. United States*, 449 U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except 'in rare and exceptional circumstances.'" (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 187 n.33 (1978))); *In re Price*, 353 F.3d 1135, 1141 (9th Cir. 2004) ("If the statutory language is unambiguous, then our 'judicial inquiry is complete.'" (quoting *Rubin*, 449 U.S. at 430)).

[65] *See Rizo*, 950 F.3d at 1224–25 (discussing canons of statutory interpretation).

[66] *See id.*

Resort to these canons is anomalous because the Supreme Court has instructed that they are useful only for resolving ambiguity. *See Harrison*, 446 U.S. 578, 588 (1980) ("The rule of *ejusdem generis*, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty." (quoting *United States v. Powell*, 423 U.S. 87, 91 (1975))); *Russell Motor Car Co. v. United States*, 261 U.S. 514, 520 (1923) ("'*Noscitur a sociis*' is a well-

---

interpret a general term that follows specific ones to refer only to items of the same "class" as the specific ones.[67] And the canon of *noscitur a sociis* instructs that "a word is known by the company it keeps."[68] In

established and useful rule of construction, where words are of obscure or doubtful meaning, and then, but only then, its aid may be sought to remove the obscurity or doubt by reference to the associated words." (emphasis added)).

Beyond resorting to the canons of *ejusdem generis* and *noscitur a sociis*, the Ninth Circuit relied on the principle that we must give effect to every part of a statute. It reasoned that "any other factor other than sex" must be job related because "[i]f *any* factor other than sex could defeat an EPA claim, the first 'other'" and the three enumerated exceptions "would be rendered meaningless." *Rizo*, 950 F.3d 1224. We disagree. "Other" has a meaning even though *any* "factor other than sex" defeats an EPA claim: It refers to the fact that "*bona fide*," *Gunther*, 452 U.S. at 170 (emphasis added), seniority, merit, and productivity systems are "additional," *Webster's Third New International Dictionary*, note 39, *ante*, "factor[s] other than sex." The three enumerated exceptions also have meanings even though *any* "factor other than sex" defeats an EPA claim: They refer to "specifically contemplated" factors that defeat an EPA claim. *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009); *see also id*. ("[T]he whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated—known unknowns . . . ."); H.R. Rep. No. 88-309, at 3 ("[T]he broad general exclusion [was] . . . included" because "it [was] impossible to list each and every exception . . . ."). "In any event, we do not woodenly apply limiting principles every time Congress includes a specific example along with a general phrase." *Ali*, 552 U.S at 227. Nor do we use interpretive principles to introduce ambiguity where there is none. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (quoting *Rubin*, 449 U.S. at 430)).

[67] *Cleveland v. United States*, 329 U.S. 14, 18 (1946).

[68] *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 694 (1995).

the Ninth Circuit's view, "any other factor other than sex," a general term, kept company with three specific terms—seniority, merit, and productivity systems—and should be interpreted to refer only to job-related factors.[69] Job relatedness, it declared, is "obvious[ly]"[70] the relevant "class."[71]

It is not at all "obvious" to us that the three specific exceptions are job related.[72] Seniority systems are not necessarily job related, regardless of whether merit and productivity systems deserve such a descriptor. Seniority systems afford employees rights and benefits according to the length of their employment, not necessarily their employment in a particular job.[73] Any pay disparity resulting from a seniority system could therefore be unrelated to differences in two employees' "work responsibilities and qualifications."[74] For example, Employee A could earn more than Employee B, who has served twice as long in the position that Employee A also holds, merely because

---

[69] *See Rizo*, 950 F.3d at 1224–25 (applying the canons of *ejusdem generis* and *noscitur a sociis*).

[70] *Id*. at 1225.

[71] *Cleveland*, 329 U.S. at 18.

[72] *Rizo*, 950 F.3d at 1225.

[73] *See Cal. Brewers Ass'n v. Bryant*, 444 U.S. 598, 605–06 (1980) ("A 'seniority system' is a scheme that . . . allots to employees ever improving employment rights and benefits as their relative lengths of pertinent employment increase.").

[74] *Aldrich*, 963 F.2d at 525.

Employee A has worked for her employer in different capacities for twice as long as Employee B.

We cannot think of a fitting "class"[75] or unifying descriptor beyond the one the plain meaning of the EPA provides: "factor[s] other than sex." The most commonsensical assessment of the EPA's exceptions, in our view, is that no such "class" or descriptor exists.[76] To shoehorn seniority, merit, and productivity systems into a manufactured label or category would be to overinterpret the EPA and distort Congress's intent. The canons of statutory interpretation are merely tools to aid our understanding.[77] When the tools prove "unhelpful," we may abandon them.[78]

The canons prove "unhelpful" here.[79] Even if we were to determine that the term "factor other than sex" is ambiguous, we would then turn to the EPA's legislative history as our remaining

---

[75] *Cleveland*, 329 U.S. at 18.

[76] *Id.*

[77] *See Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) ("[C]anons are not mandatory rules. They are guides that 'need not be conclusive.'" (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001))).

[78] *Snell Island SNF LLC v. Nat'l Lab. Rels. Bd.*, 568 F.3d 410, 420 (2d Cir. 2009), *vacated on other grounds*, 561 U.S. 1021 (2010), *and abrogated on other grounds by New Process Steel, L.P. v. Nat'l Lab. Rels. Bd.*, 560 U.S. 674 (2010); *see also Ali*, 552 U.S. at 225 (declining to apply the canons of *ejusdem generis* and *noscitur a sociis* where "it [was] not apparent what common attribute connect[ed] the specific items").

[79] *Snell Island*, 568 F.3d at 420.

interpretive guide.[80] As discussed above, that legislative history "strongly supports" our interpretation.[81] All routes lead us to the same conclusion: To establish the EPA's "factor other than sex" defense, a defendant must prove only that the pay disparity in question results from a differential based on any factor except for sex.

### 4. The Culinary Institute's Compensation Plan

We return, at last, to the compensation plan to determine whether the Culinary Institute was entitled to summary judgment on Eisenhauer's EPA claim. We conclude that it was.

The EPA's "basic structure and operation are . . . straightforward."[82] A plaintiff must establish a *prima facie* EPA case by demonstrating that "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs

---

[80] *See Blum v. Stenson*, 465 U.S. 886, 896 (1984) ("Where . . . resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear."); *Dauray*, 215 F.3d at 264. ("When the plain language and canons of statutory interpretation fail to resolve statutory ambiguity, we will resort to legislative history.").

[81] *Lawrence + Mem'l Hosp.*, 812 F.3d at 266; *see* text accompanying notes 55–62, *ante*.

[82] *Corning Glass Works*, 417 U.S. at 195.

are performed under similar working conditions."[83] If the plaintiff has established a *prima facie* case, the burden of persuasion shifts to the

[83] *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *accord Corning Glass Works*, 417 U.S. at 195.

The Culinary Institute argues that the District Court erred in concluding that Eisenhauer established a *prima facie* case of sex-based pay discrimination. It contends that she could not have established a *prima facie* case by identifying a single male-comparator employee who earns more than her while ignoring all other employees who perform substantially equal work. In support of its argument, the Culinary Institute identifies five other comparators that it claims illustrate that no sex-based pay disparity exists.

The question of how many comparators are necessary to establish a *prima facie* EPA case is a source of disagreement among our sister circuits. *Compare Equal Emp. Opportunity Comm'n v. Md. Ins. Admin.*, 879 F.3d 114, 122 (4th Cir. 2018) (holding that one comparator is sufficient), *and Price v. Lockheed Space Operations Co.*, 856 F.2d 1503, 1505 (11th Cir. 1988) (same), *with Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 916 (9th Cir. 1983) (holding that, in a professional setting such as a college, the proper comparison is to the average of wages paid to all similarly situated employees of the opposite sex). And it is a question that we need not answer today because we affirm the order granting summary judgment for the Culinary Institute on Eisenhauer's EPA claim on other "grounds supported in the record." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir. 2006); *see* text accompanying notes 85–88, *post*.

The *separate* question of how many comparators are necessary to establish a *prima facie* case under New York Labor Law § 194(1) is one that the District Court did not consider. As we explain in Section III.B, the District Court improperly assessed Eisenhauer's § 194(1) claim "under the same standard" as her EPA claim. J.A. 270; *see* text accompanying notes 95–101, *post*. "Ordinarily, we 'will not review an issue the district court did not decide.'" *Colavito v. N.Y. Organ Donor Network, Inc.*, 486 F.3d 78, 80 (2d Cir. 2007) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 88 (2d Cir. 1996)). Thus, should the District Court decide to invoke its supplemental jurisdiction over Eisenhauer's § 194(1) claim on remand, it must

26

employer to show that one of the EPA's affirmative defenses justifies the pay disparity.[84] To establish the EPA's "factor other than sex" defense, a defendant must prove only that the pay disparity in question results from a differential based on any factor except for sex.

We assume without deciding that Eisenhauer has established a *prima facie* EPA case and that the Culinary Institute consequently had the burden to establish its affirmative defense. We may affirm the

determine whether a single male comparator is sufficient to establish a *prima facie* case under § 194(1). *See* text accompanying notes 98–101, *post*.

[84] *See Corning Glass*, 417 U.S. at 196; *Belfi*, 191 F.3d at 136.

The Equal Employment Opportunity Commission, as *amicus curiae*, argues that the District Court improperly conflated the burdens imposed by the EPA with those imposed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which applies to disparate-treatment claims under Title VII. The burden-shifting framework applicable to such claims does differ from the one applicable to EPA claims. *See Littlejohn v. City of New York*, 795 F.3d 297, 309 n.7 (2d Cir. 2015) (recognizing the distinction); *Md. Ins. Admin.*, 879 F.3d at 120 n.6 (same); *Taylor v. White*, 321 F.3d 710, 716 (8th Cir. 2003) (same). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a *prima facie* case of disparate treatment. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). If the plaintiff establishes the *prima facie* case, "the burden shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for the employee's'" disparate treatment. *Id.* (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). If the employer carries its burden, "the plaintiff must then come forward with evidence that the defendants proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Even if the District Court arguably conflated the burdens imposed by the EPA with those imposed by *McDonnell Douglas*, the "record" demonstrates that the Culinary Institute carried its burden under the EPA. *Thyroff*, 460 F.3d at 405; *see* text accompanying notes 85–88, *post*.

27

order granting summary judgment for the Culinary Institute if it showed that there is no "genuine factual dispute" that the pay disparity was based on any factor except for sex.[85] We conclude that the Culinary Institute made such a showing.

The Culinary Institute's records regarding compensation leave no room for "genuine factual dispute."[86] As both parties agree, the pay disparity resulted entirely from (1) disparate starting salaries and (2) the formulaic application of the compensation plan, which it also applied uniformly to other faculty members, male and female. The terms of the compensation plan are sex neutral. In addition, the Culinary Institute provided undisputed explanations for its fixed-dollar pay increases: The raises recognized the skill, experience, or added value associated with additional degrees or academic promotions. The Culinary Institute's justification produces neither a whiff of pretext nor anything else to raise a jury's doubt or suspicion. As it happens, Eisenhauer never even argues that the compensation has any basis in sex. Her appeal rests entirely on a misinterpretation of the term "factor other than sex."

---

[85] *Anderson*, 477 U.S. at 248.

[86] *Id.*

28

In short, no "reasonable jury"[87] could find that the pay disparity was based on sex, intentionally or otherwise.[88] Accordingly, we affirm the decision of the District Court as to Eisenhauer's EPA claim.

## B. New York Labor Law's "Factor Other Than Sex" Or "Status" Defense

Turning next to New York's equal-pay law, New York Labor Law § 194(1), we consider whether its catch-all exception includes a job-relatedness requirement. We conclude that it does.

In some respects, the EPA and § 194(1) are similar. Like the EPA, § 194(1) prohibits pay discrimination on the basis of sex. Until October 2019, it provided that

> [n]o employee [would] be paid a wage at a rate less than the rate at which an employee of the opposite sex in the same establishment [was] paid for equal work on a job the performance of which require[d] equal skill, effort and responsibility, and which [was] performed under similar working conditions.[89]

---

[87] *Id.*

[88] *See Ryduchowski*, 203 F.3d at 142 ("[T]he EPA does not require a plaintiff to establish an employer's discriminatory intent.").

[89] N.Y. Lab. Law § 194(1) (2016) (effective until Oct. 8, 2019).

29

Since October 2019, it has prohibited pay discrimination on the basis of "status within one or more protected class or classes" instead of "sex."[90]

Section 194(1) also similarly sets forth four exceptions to its prohibition. Before January 2016, the statute excluded pay disparities "made pursuant to a differential based on: (a) a seniority system; (b) a merit system; (c) a system which measures earnings by quantity or quality of production; or (d) *any other factor other than sex*."[91] New York State's legislature then amended the fourth exception from "any other factor other than sex" to "a *bona fide* factor other than sex,"[92] and later, to "a *bona fide* factor other than status within one or more protected class or classes."[93]

Despite their similarities, the EPA and § 194(1) differ in at least one key respect. Since January 2016, § 194(1) has required the "*bona*

---

[90] *Id*. § 194(1) (2019) (effective Oct. 8, 2019). In addition, the provision now covers both "equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions" *and* "substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions." *Id.*

[91] N.Y. Lab. Law § 194(1) (1966) (emphasis added) (effective until Aug. 18, 1980); *id.* § 194(1) (1980) (emphasis added) (effective until Jan. 19, 2016).

[92] 2015 N.Y. Laws 362 (emphasis added).

[93] 2019 N.Y. Laws 93 (emphasis added).

The recent amendments to § 194(1) are not retroactive. *See Thomas v. Bethlehem Steel Corp.*, 470 N.E.2d 831, 833 (N.Y. 1984) ("An amendment will in general have prospective effect only, unless its language indicates that it should receive a contrary interpretation.").

*fide* factor other than sex" or "status" to "be *job-related* with respect to the position in question."[94] As we have explained, the EPA's "factor other than sex" defense imposes no such requirement. By contrast, under New York Labor Law § 194(1), to establish the "factor other than sex" or "status" defense, a defendant must prove that the pay disparity in question results from a differential based on a job-related factor.

The District Court evaluated Eisenhauer's EPA and § 194(1) claims "under the same standard."[95] Until January 2016, this approach may have been the proper one.[96] Since at least January 2016, however, the relevant standards have differed at least because § 194(1) has included a job-relatedness requirement. Neither Eisenhauer nor the Culinary Institute identified or acknowledged this difference before the District Court.[97] The District Court thus understandably

---

[94] N.Y. Lab. Law § 194(1) (2016) (emphasis added) (effective until Oct. 8, 2019); *id*. § 194(1) (2019) (emphasis added) (effective Oct. 8, 2019).

[95] J.A. 270 (quoting *Moccio*, 889 F. Supp. 2d at 570).

[96] *See Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 n.2 (2d Cir. 2015) (summary order) ("An equal pay claim under New York Labor Law § 194 is analyzed under the same standards applicable to the federal Equal Pay Act." (quoting *Pfeiffer v. Lewis Cnty.*, 308 F. Supp. 2d 88, 98 n.8 (N.D.N.Y. 2004))).

[97] On appeal, Eisenhauer also fails to identify any difference between the EPA and New York's equal-pay law. We may nevertheless exercise our discretion to consider the standard under which to evaluate § 194(1) claims. *See generally United States v. Gomez*, 877 F.3d 76, 92 (2d Cir. 2017) ("We are 'more likely to exercise our discretion (1) where consideration of the issue is necessary to avoid manifest injustice or (2) where the issue is purely legal and there is no need for additional fact-finding.'" (quoting *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000))).

31

overlooked it. Nonetheless, we hold that the District Court did not consider the divergent requirements imposed by the EPA and New York Labor Law § 194(1) when assessing Eisenhauer's claims and the Culinary Institute's affirmative defense. The District Court should have assessed Eisenhauer's § 194(1) claim as altogether distinct from her EPA one.

We therefore vacate the order granting summary judgment as to Eisenhauer's § 194(1) claim and remand the cause for the District Court to decide whether to invoke its discretion to exercise supplemental jurisdiction over that state-law claim.[98] If it decides to exercise its supplemental jurisdiction, it must assess Eisenhauer's § 194(1) claim anew. In doing so, it must consider whether (1) Eisenhauer established a *prima facie* case under § 194(1)[99] and (2) the Culinary Institute showed that there is no "genuine factual dispute"[100] that its compensation plan is job related.[101]

---

[98] *See generally* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

[99] *See* note 83, *ante*.

[100] *Anderson*, 477 U.S. at 248.

[101] A pay disparity between Eisenhauer and Perillo existed in 2011 and 2012 and has persisted since 2017. *See* note 5 and accompanying text, *ante*. Since the New York State legislature only imposed a job-relatedness requirement in 2016, the District Court need not consider whether the compensation plan was job related in 2011 and 2012. The Culinary Institute has established its affirmative defense as to the pay disparities in 2011 and 2012.

# IV. CONCLUSION

To summarize, we hold as follows:

(1) Under the Equal Pay Act, 29 U.S.C. § 206(d), to establish a "factor other than sex" defense, a defendant must prove only that the pay disparity in question results from a differential based on any factor except for sex.

(2) The defendant showed that there is no genuine factual dispute that its sex-neutral compensation plan—which incorporates a collective bargaining agreement—is a "factor other than sex" that justifies the pay disparity between the plaintiff and her male colleague.

(3) Under New York Labor Law § 194(1), to establish the "factor other than sex" or "status" defense, a defendant must prove that the pay disparity in question results from a differential based on a job-related factor.

(4) The District Court did not consider the divergent requirements imposed by the EPA and § 194(1) when assessing the claims and affirmative defense presented.

For the foregoing reasons, we **AFFIRM IN PART** insofar as the District Court granted summary judgment for the defendant on the EPA claim. We **VACATE IN PART** and **REMAND** insofar as the District Court granted summary judgment for the defendant on the § 194(1) claim.

DEBRA ANN LIVINGSTON, *Chief Judge*, concurring in part and concurring in the judgment:

I concur in the majority's decision to vacate and remand the grant of summary judgment to the Defendant-Appellee Culinary Institute of America ("CIA") on Plaintiff-Appellant Anita Eisenhauer's state law claim pursuant to New York's equal pay law, which requires that a defendant seeking to prove that a pay disparity results from a "bona fide factor other than [sex]" show that the factor is "job-related" and "consistent with business necessity." N.Y. Lab. Law § 194(1)(b)(iv)(B). Given this statutory language, which is facially distinct from the analogous provision of the federal Equal Pay Act, *see* 29 U.S.C. § 206(d)(1)(iv), the district court erred in assuming that Eisenhauer's state and federal claims may be evaluated under the same standard.

I write separately because, though I concur in the majority's disposition of Eisenhauer's federal Equal Pay Act claim, I respectfully cannot join in the majority's statement that to establish an affirmative defense under § 206(d)(1)(iv) of the Act, an employer may rely on a differential based on literally any factor except for sex. That reading of the statute contradicts our prior precedents as well as the statute's plain meaning. As this Court held more than three decades ago, a basis for a differential "may qualify under the factor-other-than-sex defense only when [it is] based on legitimate business-related considerations." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992). I decline to join the majority in abandoning this long-standing interpretation of the Act here.

## I

In the years following World War II, the United States faced a "serious and endemic" problem—a "wage structure" in which men were "paid more" than women although their "duties [were] the same." *Corning Glass Works v. Brennan*,

1

417 U.S. 188, 195 (1974) (quoting S. Rep. No. 176, 88th Cong., 1st Sess. 1 (1963)).[1] The problem was a complicated one, emerging from "ancient but outmoded belief[s]" about men and women's respective "role[s] in society." *Id.* Despite this complexity, Congress's "solution . . . was quite simple in principle: to require that 'equal work will be rewarded by equal wages.'" *Id.* (quoting S. Rep. No. 176). Hence, the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), was enacted. *Id.*

To effectuate its end, the EPA empowers a plaintiff to recover damages when paid less than colleagues of the opposite sex who performed "equal work." 29 U.S.C. § 206(d)(1), (3). To constitute "equal work," a job must "require[] equal skill, effort, and responsibility." *Id*. § 206(d)(1). "[T]he EPA does not require" a plaintiff to provide "proof of intentional discrimination." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 640 (2007). Rather, an employer is found to be presumptively liable once the plaintiff makes an initial showing of unequal pay. *Corning Glass*, 417 U.S. at 195. The majority assumes that Eisenhauer has made out this *prima facie* showing based on the pay disparity between herself and one of her colleagues, Robert Perillo, and I do the same.

The Act also creates an affirmative defense for an employer who can prove that an otherwise unlawful pay gap is due to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Only the fourth affirmative defense—sometimes referred to as the "catchall" exception—is at issue in this case. *Corning Glass*, 417 U.S. at 196. Specifically, the CIA argues that it is relieved of any liability by the catchall exception on account of the fact that the persistent pay differential between Eisenhauer and Perillo is the result of a formulaic compensation plan, established pursuant to a collective bargaining agreement, which provides for fixed-dollar

---

[1] Unless otherwise indicated, this opinion omits all internal citations, quotation marks, alterations, and footnotes from citations.

increases in compensation upon the attainment of certain promotions or academic degrees as well as across-the-board annual percentage increases.

Addressing whether the CIA can take refuge within the bounds of the fourth exception requires considering the defense's scope. As is always the case, we begin with the text, considering "not only . . . the language itself," but also "the specific context in which [the] language is used[] and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion). Here, the affirmative defense permits reliance on "any other factor other than sex," 29 U.S.C. § 206(d)(1)(iv)," a somewhat cumbersome linguistic construct. At its heart is the phrase "any other," which conveys its reference to a thing "specified or understood contextually." *See Other*, OXFORD ENGLISH DICTIONARY (3d ed. 2004). Thus, to understand the reach of the fourth defense, we must look to the defenses with which it appears—the exceptions for seniority, merit, and production, respectively.

That the fourth defense's "catchall" must be construed in light of these three specific defenses derives further support from the familiar linguistic canons. Most pertinent is the canon of *ejusdem generis*, which provides that "where, as here, a more general term follows more specific terms in a list, the general term is usually understood to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018). "The principle of *ejusdem generis* essentially . . . implies the addition of *similar* after the word *other*." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 199 (2012) (emphasis in original); *see also In re Bush Terminal Co.*, 93 F.2d 659, 660 (2d Cir. 1938) ("The words 'other' or 'any other' following an enumeration of particular classes ought to be read as 'other such like' and to include only those of like kind or character."). Thus, for example, in *Circuit City Stores, Inc. v. Adams*, the Supreme Court interpreted § 1 of the Federal Arbitration Act, which lists "seamen, railroad employees, or *any other* class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1 (emphasis added), to include only transportation workers, not workers in literally any

3

industry.  *See* 532 U.S. 105, 114–15 (2001).[2]  Likewise, it follows that "any other factor other than sex" in the catchall exception should be read to extend to factors *similar* to the three enumerated—and not *literally* any other factor.[3]

So what then is the common feature that unites the three specific exceptions? Seniority rewards an employee for her "heightened value" to her employer accrued through "personal work experiences" over time.  *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 535 (1983).  Merit rewards greater ability.  And quality and quantity of production reward the employee's output.  Each of these defenses allows an employee to be paid more when proximate measures indicate she is "more valuable to [her] employer"—that is, when her value as an employee exceeds merely fulfilling the minimum qualifications to perform her job.  *Id.*  Three decades ago, this Court, relying in part on the Act's legislative history, offered a somewhat broader gloss, stating that a basis for a differential "may qualify under

[2] As this example makes clear, the presence of the word "any"—which the majority relies on to give the fourth defense a more expansive reach—does not weigh against the application of the principle of *ejusdem generis*.  The majority also suggests the canon is inappropriate in light of the Supreme Court's characterization of this defense as a "catch-all."  Majority at 18 (quoting *Corning Glass Works*, 417 U.S. at 204).  But the canon applies precisely "when a drafter has tacked on a catchall phrase at the end of an enumeration of specifics."  SCALIA & GARNER, *supra*, at 199. Accordingly, the Supreme Court regularly applies the canon to narrow what it characterizes as a "catchall" exception.  *See, e.g.*, *Epic Sys. Corp.*, 138 S. Ct. at 1625 ("[T]here is no textually sound reason to suppose the final *catchall* term should bear such a radically different object than all its predecessors." (emphasis added)).

[3] While similarly arriving at its conclusion regarding the not unlimited scope of the fourth defense, the Ninth Circuit relied both on the canon of *ejusdem generis* and its cousin canon, *noscitur a sociis*, which teaches that "a word is to be understood by the company it keeps."  *Yates*, 574 U.S. at 543; *see Rizo v. Yovino*, 950 F.3d 1217, 1224 (9th Cir. 2020) (en banc) ("Other well-settled rules of statutory construction reinforce the conclusion that the fourth affirmative defense includes factors of the same type as the ones Congress specifically identified.  The first is the *noscitur a sociis* canon . . . .").  However, "[a]lthough judges often use these two Latin canons interchangeably, it is *ejusdem generis* (rather than *noscitur a sociis*) that more squarely applies to figure out how to read [a] general term at the end of [a] series."  WILLIAM N. ESKRIDGE JR., INTERPRETING LAW: A PRIMER ON HOW TO READ STATUTES AND THE CONSTITUTION 77 (2016).

4

the factor-other-than-sex defense only when [it is] based on legitimate business-related considerations." *Aldrich*, 963 F.2d at 525; *see also Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999) ("[T]o successfully establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential."). While I can postulate adopting a narrower construction of the statute's language, it is not clear to me that this more general interpretation is mistaken. [4]

"[T]his level of generality question" is typical when applying the *ejusdem generis* canon, with one identified "commonality" perhaps offering a "tighter fit with the . . . specific items . . . on the list" while another "dovetails [more neatly] with statutory purpose." ESKRIDGE, *supra*, at 78. Not surprisingly, although most of our sister circuits to address the scope of the catchall have adopted a limiting interpretation—like *Aldrich*'s—focused on the employer's legitimate business interests, the exact contours have differed. *Compare Equal Emp. Opportunity Comm'n v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988) ("[T]he 'factor other than sex' defense does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason."), *and Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015) ("[A] classification system serves as a

---

[4] Indeed, I tend to agree that the legislative history, to the extent it is relevant, marshals in favor of the *Aldrich* Court's broader reading of the catchall to include all business-related reasons. In particular, the House Report on the EPA bill—which the majority selectively quotes for the proposition that the fourth defense is a "broad general exclusion"—identifies a number of examples of "exceptions" that would fall within the catchall, which primarily consist of job-related differences, such as "shift differentials, restrictions on or differences based on time of day worked, hours of work, lifting or moving heavy objects, differences based on experience, training, or ability," but also include "certain special circumstances, such as 'red circle rates.'" H.R. Rep. No. 88-309, at 3 (1963), *as reprinted in* 1963 U.S.C.C.A.N. 687, 689. "[R]ed circle rates" refers to when an employer moves employees to "less demanding jobs but . . . continues[] to pay them a premium rate in order to have them available when they are again needed for their former jobs." *Id.* Notably, the Supreme Court seems to have recognized that "red circle rates" may, in some circumstances, fall within the "factor other than sex" defense, *see Corning Glass*, 417 U.S. at 209, and the EPA's implementing regulations provide for the same, *see* 29 C.F.R. § 1620.26.

5

defense only where any resulting difference in pay is 'rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue.'" (quoting *Aldrich*, 963 F.2d at 525)), *with Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988) (holding that the "'factor other than sex' exception applies when the disparity results from unique characteristics of the same job; from an individual's experience, training, or ability; or from special exigent circumstances connected with the business"), *and Rizo*, 950 F.3d at 1224 ("[W]e conclude that the fourth affirmative defense comprises only job-related factors, not sex.").

In the decades since the EPA's enactment, cases have arisen that have required parsing these differing standards, *see Rizo*, 950 F.3d at 1231 (discussing the "circuit split" on the use of "prior pay as an affirmative defense to a *prima facie* EPA claim"). But fortunately, this is not such a case. That is because, even when adopting a narrow reading of the factor-other-than-sex defense, it is clear that the district court here did not err in awarding the defendant summary judgment.

As neither party disputes, the pay disparity between Eisenhauer and Perillo is a function of two factors: their starting salaries and the CIA's formulaic system of raises. When Eisenhauer was hired in 2002, she was offered a starting salary of $50,000 based on her resume, job application, and interview performance. Six years later, Perillo was hired at a starting salary of $70,000, which—when adjusted to account for annual pay increases—exceeded Eisenhauer's starting salary by approximately $6,000. As Eisenhauer acknowledges, this difference reflected Perillo's formal culinary training and his exemplary performance during the mock lecture and cooking demonstration portions of his interview.

Once hired, both Eisenhauer and Perillo took advantage of the opportunities provided by the CIA's compensation plan to increase their annual pay. Both progressed through the ranks and obtained the title of "Professor," and both attained bachelor's and master's degrees. When combined with the annual across-the-board raises, these salary enhancements were substantial: Eisenhauer earned

6

approximately $115,000 in 2020, while Perillo earned approximately $122,000 that year.  Nevertheless, a pay gap has persisted—roughly $7,000 in 2020—largely as a remnant of their differences in starting salary.

Eisenhauer asserts no illegality with regard to her and Perillo's respective starting salaries, acknowledging that the differential was lawfully premised on Perillo's greater educational experience and interview performance.  In that regard, this case is unlike those in which a defendant has been found in violation of the EPA for relying on a facially neutral compensation system that "perpetuate[d] the effects of the company's prior illegal practice[s]."  *Corning Glass*, 417 U.S. at 209.  Nevertheless, Eisenhauer argues that the CIA's system of formulaic increases from a starting salary fails to account for the possibility that any differences in qualifications that justified a pay disparity at the moment of hiring may well have dissipated over time.  In essence, she argues that the CIA's compensation system is unlawful because it fails to include any mechanism for adjusting an employee's pay based on an individualized assessment of her merit.

But the EPA demands no such individualized assessment.  To the contrary, the affirmative defenses found in the statute contemplate reliance in setting pay on proxies for an employee's value to the employer, such as seniority, which may well fail to align with what a more particularized evaluation of an employee's worth might dictate.  *See* 29 U.S.C. § 206(d)(1).  Here, the CIA utilized a system that formulaically increased each instructor's pay in a way that depended on the attainment of certain objective criteria—namely, promotions or academic degrees—that the CIA used to identify those instructors positioned to add greater value to the institution.

Such a system falls squarely within the scope of § 206(d)(1)(iv)'s exception for "any other factor other than sex."  And because Eisenhauer makes no argument that this facially neutral system of pay raises perpetuates an initially unlawful disparity, it follows that she has failed to make out a viable claim.  *See Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 920 (9th Cir. 1983) ("[S]alary differentials based

7

on unequal starting salaries do not violate the Equal Pay Act if the employer can show that the original disparity was based on a legitimate factor other than sex."). Accordingly, I agree with the majority that we should affirm the district court's award of summary judgment to the CIA—though I do so on narrower grounds.

## II

Rather than follow the straight path through the statute's text and our precedent, the majority wipes the slate clean and devises a new interpretation of the EPA's factor-other-than-sex defense that would permit an employer to rely on a differential based on literally any factor except for sex—or at least any factor that would not function as a "'loophole[]' that would sanction sex-based pay discrimination." Majority at 16 n. 48 (quoting *Aldrich*, 963 F.2d at 525). This conclusion, the majority argues, is demanded by the "unambiguous" text of the statute. *Id.* at 15. I am unconvinced. As set forth in the previous section, a careful reading of the statute suggests § 206(d)(1)(iv)'s "catchall" exception ought to be read more narrowly in light of the specific exceptions that precede it. But even if this were not the case, I would still have concerns that would prevent me from joining the majority's opinion in full.

First, the majority's opinion is in substantial tension with —if not outright violation of—our rule that "[a] panel is bound to adhere to the earlier precedent of this Court in the absence of a decision by the Supreme Court or an *en banc* panel of this Court calling that precedent into question." *Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d 114, 122 (2d Cir. 2010). In *Aldrich*, we explicitly rejected the unbounded interpretation adopted by the majority here, holding that an employer could not rely on its use of a "facially neutral civil service examination and classification system [merely] because it was *literally* a factor other than sex," instead requiring that the system "ha[d] some grounding in legitimate business considerations." 963 F.2d at 526–27. The majority responds by suggesting that *Aldrich* was a narrow case about job classification systems and should not be read more broadly. Maybe so—though I have my doubts. *Hormel Foods Corp. v. Jim*

8

*Henson Prods., Inc.*, 73 F.3d 497, 508 (2d Cir. 1996) ("Dictum" refers only to "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding").

Regardless, our subsequent precedents have declined to adopt such a narrow reading, instead explaining time and again that a "legitimate business reason" is necessary to establish any "factor other than sex." *Belfi*, 191 F.3d at 136; *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995) ("An employer who attempts to justify a pay differential based on a 'factor other than sex' must also prove that the gender-neutral factor was adopted for a legitimate business reason."); *see also Forden v. Bristol Myers Squibb*, 63 F. App'x 14, 15 (2d Cir. 2003) (summary order) (same). As I suggested above, there may well be genuine questions regarding the exact contours of the factor-other-than-sex exception found in § 206(d)(1)(iv), questions that are not fully answered by our prior precedent demanding a "legitimate business reason." But I see no ambiguity in our precedent that would permit the interpretation the majority adopts here.

Second, I fear the majority's novel "loophole" test for policing the bounds of the EPA's exceptions may fail to provide sufficiently meaningful guidance to future litigants, creating uncertainty for both employees and employers. The majority states that while a defendant may cite any factor except for sex to establish a § 206(d)(1)(iv) defense, a court assessing such a defense must do so with an eye towards "avoid[ing] 'loopholes' that would sanction sex-based pay discrimination." Majority at 16 n. 48 (quoting *Aldrich*, 963 F.2d at 525). But how does a court recognize such a "loophole"? The majority's opinion gives little guidance. Rather than offer some principle for identifying a "loophole" in the statute, the majority confines to a footnote a list of five examples, taken from cases and regulations, of impermissible factors—noting however that the "list is not necessarily exhaustive." *Id.* Thus, having identified a non-exhaustive set of dots, the majority leaves to the reader the work of connecting them.

9

In essence, the majority tasks the employer with proving some ill-defined negative—that deeming its compensation system lawful would not "sanction sex-based pay discrimination." Majority at 16 n. 48. In contrast, the *Aldrich* test identifies a positive characteristic of the system that the employer must prove—namely that it is justified by a "legitimate business reason"—in order to avoid liability. *Belfi*, 191 F.3d at 136. The *Aldrich* test thus renders the factor-other-than-sex defense akin to the specifically enumerated exceptions—seniority, merit, and production—which similarly identify the attributes of the challenged compensation system that the employer may point to in order to make out an affirmative defense. *See* 29 U.S.C. § 206(d)(1). Such has been the law of this Circuit (and many others) for decades and I am wary of abruptly changing course without a clear direction forward.

In sum, the majority breaks with our precedent and adopts a seemingly broader reading of the EPA's fourth affirmative defense that is out of step with many of our sister circuits. It does so without clear support from the statute's text, and it does so unnecessarily—as I have explained, the present case fits neatly into the scope of the factor-other-than-sex defense even narrowly construed. Accordingly, as to the disposition of Eisenhauer's EPA claim, I respectfully concur only in the judgment.